EDWARD M. ROBBINS, JR., ESQ., SBN 82696
CHARLES P. RETTIG, ESQ., SBN 97848
DAVID ROTH, ESQ., SBN 56054
HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C.
9150 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Telephone:   (310) 281-3200
Facsimile:   (310) 859-1430
Robbins@taxlitigator.com
Rettig@taxlitigator.com
Roth@taxlitigator.com

Attorneys for Plaintiffs, SRWST, LP,
MARKMEL, LLC, Tax Matters Partner
ALBERT PIMENTEL, Sole Member-Manager,

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SRWST, LP,<br>MARKMEL, LLC, Tax Matters Partner<br>ALBERT PIMENTEL, Sole Member-Manager,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant.<br>_____ | CASE NO. C-07-3816 JW<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Conference Date: January 14, 2008<br><br>Time: 10:00 a.m.<br><br>Place: Courtroom No. 4<br>        280 South 1st Street<br>        San Jose, CA 95113 |

Pursuant to Civil L. R. 16-9, the parties respectfully submit their Joint Case Management Statement.

1. **Jurisdiction and Service**: The United States has waived sovereign immunity with respect to the review of the FPAA the IRS issued to plaintiff for the year 1999 and subject matter jurisdiction is proper pursuant to the provisions of Title 26, United States Code § 6226 and Title 28, United States Code

**JOINT CASE MANAGEMENT STATEMENT**, CASE NO. C-07-3816 JW

§ 1346(e). There are no counterclaims. No issues exist regarding personal jurisdiction or venue. No party remains to be served.

2. **Facts:** The following facts, derived from the Internal Revenue Service ("IRS")'s previous administrative review of the case, are set forth to generally apprise the Court of the background events in this case. The United States contends that this administrative review is irrelevant to the outcome of this case. The United States has not independently verified these facts and thus they are submitted herein without prejudice to the United States disputing that any fact ever occurred or had any substance, economic or otherwise.

On May 10, 1999, Steve and Rhonda Willens ("taxpayers") entered into a limited partnership agreement with MarkMel LLC, a Delaware limited liability company, to establish SRWST Limited Partnership ("SRWST LP"), a California limited partnership. Albert Pimentel, a former business associate of Steve Willens, was listed as the sole member of MarkMel.

The taxpayers contributed 1,614,206 shares of Lucent Technologies common stock with an estimated fair market value of $100,000,000 in exchange for a 99.90 percent limited partnership interest in SRWST LP. MarkMel contributed cash of $100,100 for its 0.10 percent general partnership interest in SRWST LP. KPMG completed a discount analysis, dated May 12, 1999, and found that Lucent Technologies common stock had a volume-weighted valuation of $61.2351 per share. Therefore, the value of SRWST LP's Lucent Technologies common stock based upon KPMG's closing price was calculated to be approximately $98.8 million. However, KPMG determined that the pro rata equity value attributable to the subject limited partnership interest in SRWST LP should be discounted 1 percent for lack of marketability because of the written notification requirement in order for the limited partners of SRWST LP to receive the fair value of their pro rata interests in SRWST LP.

The partnership agreement provided that SRWST LP's primary purpose was to "manage the property now or hereafter owned by the Partnership; to acquire, manage, and hold for investment purposes, stocks, bonds, securities, interests in partnerships, real estate, or any other property . . . ." On May 10, 1999, Pimentel (as Optioner) and the taxpayers (as Optionees) entered an Option Agreement.

**JOINT CASE MANAGEMENT STATEMENT**, CASE NO. C-07-3816 JW     - 2 -

On May 10, 1999, the taxpayers also established the Steve and Rhonda Willens 1999 Charitable Remainder Unitrust ("Willens CRUT"), naming Joseph Sasek as trustee. On May 12, 1999, the taxpayers contributed their 99.90 limited partnership interest in SRWST LP to the Willens CRUT. Thereafter, the Willens CRUT became the sole limited partner of SRWST LP. Steve and Rhonda Willens were the Trustors and, as provided in the trust instrument, the non-charitable beneficiaries of the Willens CRUT.

The trust instrument provided that each taxable year during the term of the Willens CRUT, the Trustee shall pay to the Trustors a "Unitrust Amount" equal to fifty percent (50%) of the net fair market value of the Trust Estate valued as of the first business day of each taxable year of the Willens CRUT. The term of the Willens CRUT was three years. The trust instrument also provided that payments to the beneficiaries shall be made from income and then from principal to the extent that income is not sufficient and that the Unitrust Amount shall be paid in the initial taxable year of the Willens CRUT within sixty (60) days from the date of the initial contribution to the Willens CRUT, and annually thereafter on the 31st day of January of each taxable year. Upon the termination of Willens CRUT, the Trustee was required to distribute all of the then principal and income of the Willens CRUT to the charitable organization designated by each of the Trustors. The taxpayers named the MYCFO Foundation as the charitable beneficiary for the Willens CRUT.

On May 13, 1999, SRWST LP entered into a thirty-two (32) month variable prepaid forward contract ("VPFC") with Morgan Stanley & Co. International Limited ("the Bank"). The Purchase Agreement provided that the purchase price for the VPFC was 88.17% of the initial share price of $61.95 per share. The Bank disbursed $88,170,030 to SRWST LP on May 18, 1999. The termination date for the agreement was January 15, 2002, and the settlement date was January 18, 2002. The Purchase Agreement included a Collateral Agreement whereby SRWST LP delivered the stock to a collateral agent, Morgan Stanley & Co. Inc. ("Collateral Agent"), an affiliate of the Bank. SRWST LP was required to deliver to the Collateral Agent, on or prior to May 18, 1999, the eligible collateral which consisted of 1,614,206 shares of Lucent Technologies common stock. The Collateral Agent had the right to receive and retain as collateral all proceeds other than ordinary dividends or interest on the collateral.

**JOINT CASE MANAGEMENT STATEMENT**, **CASE NO. C-07-3816 JW**     - 3 -

The Purchase Agreement contained a cash settlement option which allowed SRWST LP to pay the settlement price in cash on the settlement date and retain the pledged stock. SRWST LP agreed to deliver to the Bank (subject to the cash settlement option) a number of shares equal to the product of the base amount of 1,614,206 shares and a "settlement ratio" for such settlement date on the Settlement Date.

In 1999 and 2002 only, SRWST LP made distributions to the Willens CRUT. The Willens CRUT, however, made distributions to the taxpayers in each 1999, 2000, 2001, and 2002. In 1999, the Willens CRUT made a $31,265,635 distribution to the taxpayers and the taxpayers reported only $2,030,657 of that amount as taxable. In 2000, the Willens CRUT made a $34,759,814 distribution to the taxpayers and the taxpayers reported only $1,872,577 of that amount as taxable. In 2001, the Willens CRUT made a $13,097,377 distribution to the taxpayers and the taxpayers reported only $1,009,326 of that amount as taxable. In 2002, the Willens CRUT made a $2,409,661 distribution to the taxpayers and the taxpayers reported all of that amount as taxable. The only funds available to the Willens CRUT to cover the annual unitrust distributions to the taxpayers apparently were the proceeds from the VPFC and earnings on those proceeds. During the term of the VPFC, no additional assets were apparently transferred to the Willens CRUT. Further, in 1999, the activities of SRWST LP appear to be entering into the VPFC and then distributing all of its cash to the Willens CRUT. In the subsequent years, SRWST LP apparently merely only collected the minimal dividends on the Lucent Technologies stock. In 2002, the Willens CRUT distributed $11,102,910 to the charitable beneficiary.

Plaintiff is unsure of what facts are presently in dispute, although the government denied virtually all of the factual allegations of the complaint herein.

The United States asserts that the facts described above have not yet been established and further specifically assert that the facts surrounding Plaintiff's intent in forming SRWST, LP, the Willens CRUT, and entering the VPFC as well as what rights Morgan Stanley and the Collateral Agent had in the pledged Lucent Technologies stock are unknown to it at this time.

3. **Legal Issues:**

A. Whether the VPFC entered into by SRWST, LP with respect to its Lucent Technologies Inc. stock in 1999 was a closed and completed sale of such stock in 1999 when it was finalized under a

**JOINT CASE MANAGEMENT STATEMENT**, **CASE NO. C-07-3816 JW**    - 4 -

1  common law completed sale theory and whether the amounts SRWST, LP received in exchange included
2  the cash payments under the VPFC and the value of the limited rights to participate in the appreciation of
3  the value of the Lucent Technologies, Inc. stock which would have totaled the fair market value of all of
4  the stock used in the VPFC on the day SRWST, LP entered into the VPFC.  If so, since SRWST, LP's
5  basis in the stock was $0, SRWST, LP had capital gains of $98,466,566 in 1999.

B.  Whether SRWST, LP was a sham, lacked economic substance, and under Treasury Reg. § 1.701-2, was formed and availed of in connection with a transaction or transactions a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.  If so, for federal tax purposes:

   a.  SRWST, LP is disregarded and all transactions engaged in by SRWST, LP are treated as engaged in directly by its purported partners.

   b.  The purported partners of SRWST, LP are treated as not being partners in SRWST, LP.

   c.  The rules of Subchapter K are inapplicable to the transaction or transactions engaged in by SRWST, LP.

   d.  As a result, the VPFC and the stock subject to it are deemed to be held by the Willens CRUT.  The Willens CRUT is treated as having sold a pro rata portion of the stock subject to the forward contract in each of the years 1999, 2000, 2001, and 2002 as provided in Treas. Reg. § 1.643(a)-8.  The amount of the distributions received by the taxpayers exceeded the allocable amount of basis in the stock held by the Willens CRUT and is taxable under 26 U.S.C. § 664 and Treas. Reg. § 1.643(a)-8.

   e.  Alternatively, for federal income tax purposes, the taxpayers, as the noncharitable beneficiaries of the Willens CRUT, are treated as having received distributions of gains from a closed and completed sale of stock in 1999 under a common law completed sale theory.

   f.  Furthermore, for purposes of determining their gain or loss, the remaining partners of SRWST, LP are treated as if they owned a pro rata share of the stock.

C.  Whether the entire transaction, consisting of the formation of SRWST , LP, funding SRWST, LP with the Lucent Technologies stock, formation of the Willens CRUT, entering the VPFC, and

**JOINT CASE MANAGEMENT STATEMENT**, **CASE NO. C-07-3816 JW**      - 5 -

distrubting the proceeds from the VPFC ultimately to the taxpayers, was a sham, lacked economic substance, and was done solely to substantially reduce the taxpayers' federal tax liability resulting from disposition of their Lucent Technologies stock. If so, the taxpayers are deemed to have sold their Lucent Technologies stock in 1999 at the time the VPFC was formed and executed and the taxpayers are deemed to have received capital gains in 1999 in an amount equal to the fair market value of that stock on that date less their basis in that stock.

4. **Motions**: There are no pending motions. The United States' motion for extension of time to respond to the complaint was the only prior motion. The parties anticipate filing cross-motions for summary judgment.

5. **Amendment of Pleadings**: The parties do not expect to amend the pleadings.

6. **Evidence Preservation**: The parties have taken steps to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

The United States states that, in the instant case, to the extent that Electronically Stored Information ("ESI") exists, such information may be sought from the Defendants to the extent necessary to authenticate documents or to ascertain the completeness of discovery. The United States further states that certain ESI in its possession may be protected under section 6103 of the Internal Revenue Code and/or other privileges. Non-privileged ESI will be produced in paper form.

7. **Disclosures**: There has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26. Plaintiff has provided the IRS with all documents requested during the IRS audit and will continue to provide the government with any discoverable data upon request. The parties agree that the initial disclosures requirements of Fed. R. Civ. P. 26(f) will be met by January 11, 2008.

8. **Discovery**: Informal discovery continues to date. The parties agree to follow the Federal Rules of Civil Procedure as written for the rules pertaining to their discovery. The parties propose the following dates pertaining to discovery:

A. August 1, 2008: Expert witness designation.

**JOINT CASE MANAGEMENT STATEMENT**, CASE NO. C-07-3816 JW    - 6 -

B. November 14, 2008: Non-expert witness discovery cut-off.

C. February 13, 2009: Expert witness discovery cut-off.

9. **Class Actions**: N/A.

10. **Related Cases**: None.

11. **Relief**: The relief sought through the complaint is, in effect, a declaratory judgment that plaintiff properly reported its VPFC transaction; that there are no adjustments to be made to plaintiff's From 1065 partnership tax return as alleged in the FPAA and that there is no additional tax due from plaintiff or any of plaintiff's partners. The United States contends that the FPAA issued by the IRS with respect to plaintiff for tax year 1999 should be upheld and the proposed adjustments set forth in the FPAA should become final.

12. **Settlement and ADR:** Although a specific offer to settle this matter was discussed between the IRS and Plaintiff while it was pending at the administrative level, the agreement was never finalized and the IRS issued its FPAA and Plaintiff filed the instant suit. At this point, the IRS cannot settle the matter and jurisdiction to do so resides with the Department of Justice, Tax Division. Plaintiff has made the same offer of settlement discussed at the administrative level to the Department of Justice, Tax Division, which cannot adequately consider such offer at this time until it obtains further information through either informal or formal discovery.

The parties see no need for ADR in this case.

13. **Consent to Magistrate Judge For All Purposes:** All parties will not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

14. **Other References:** This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. **Narrowing of Issues:** The parties expect to narrow the factual issues significantly through stipulations and summaries.

16. **Expedited Schedule**: This is not the type of case that can be handled on an expedited basis with streamlined procedures.

**JOINT CASE MANAGEMENT STATEMENT**, CASE NO. C-07-3816 JW    - 7 -

17. **Scheduling**:  Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

    A.  January 11, 2008: Rule 26(a)(1) Initial Disclosure Deadline.

    B.  August 1, 2008:  Expert witness designation.

    C.  November 14, 2008:  Non-expert witness discovery cut-off.

    D.  February 13, 2009:  Expert witness discovery cut-off.

    E.  May 13, 2009:  Dispositive motion hearing cut-off date

    F.  August 3, 2009:  Pretrial conference date

    G.  Trial date sixty days after the pretrial conference.

18. **Trial:**  Plaintiff has requested a jury trial.  The trial is expected to last 5-7 days.

19. **Disclosure of Non-party Interested Entities or Persons**:  Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. Plaintiff hereby identifies the following persons, firms, partnerships, corporations (including parent corporations) or other entities known by plaintiff to have either:  (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding:

SRWST, LP;

Markmel, LLC;

Albert Pimentel;

The Steve and Rhonda Willens 1999 Charitable Remainder Trust, a partner in SRWST, LP;

Steven M. Willens; and

Rhonda D. Willens, beneficiaries of the  Steve and Rhonda Willens 1999 Charitable Remainder Trust.

20. **Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter**:  Counsel for the parties are experienced tax litigators and are adept at facilitating the just, speedy and inexpensive disposition of cases like this.

**JOINT CASE MANAGEMENT STATEMENT**, **CASE NO. C-07-3816 JW**      - 8 -

| | |
|---|---|
| DATED: January 3, 2008 | Respectfully submitted, |
| | HOCHMAN, SALKIN, RETTIG, TOSCHER & PEREZ, P.C. |
| | By: /s/ EDWARD M. ROBBINS, JR.<br>       EDWARD M. ROBBINS, JR. |
| | Attorneys for Plaintiffs<br>SRWST, LP, MARKMEL, LLC, Tax Matters Partner.<br>ALBERT PIMENTEL, Sole Member-Manager |
| | SCOTT N. SCHOOLS<br>United States Attorney |
| | /s/ JEREMY N. HENDON<br>JEREMY N. HENDON<br>ADAM F. HULBIG<br>Trial Attorneys, Tax Division<br>U.S. Department of Justice |
| | Attorneys for Defendant, United States of America |

**JOINT CASE MANAGEMENT STATEMENT**, **CASE NO. C-07-3816 JW**     - 9 -

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing **JOINT CASE MANAGEMENT STATEMENT** has been made this 3rd day of January, 2008 via the Court's CM/ECF system to:

Edward M. Robbins, Esq.         Robbins@Taxlitigator.com

                                             /s/ Jeremy N. Hendon
                                             JEREMY N. HENDON
                                             Trial Attorney, Tax Division
                                             U.S. Department of Justice

**JOINT CASE MANAGEMENT STATEMENT**, CASE NO. C-07-3816 JW     - 10 -